4KAREN L. LANDAU, ESQ., CSB 128728
Attorney at Law
2626 Harrison St.
Oakland, CA 94612
(510) 839-9230 x 14

Attorneys for Defendant Curtiss Parker

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: CR 03-620-TJH |
|---|---|
| Plaintiff, | Date: April 19, 2010 |
| vs. | Time: 10:00 a.m. |
| CURTISS PARKER, | Courtroom: 17 |
| Defendant. | |

DEFENDANT'S MOTION FOR BAIL PENDING APPEAL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................ii
　Background ................................................................................ 2
　Defendant Meets The Standard For Bail Pending Appeal ............. 5
　A. It is Fairly Debatable Whether the Court Erred in Directing the Jury to Treat Omissions in the Same Manner as Misrepresentations................................................................... 7
　B. The Joint Brief Presents Additional Substantial Questions for Appeal....................................................................................12
CONCLUSION ...............................................................................13

# TABLE OF AUTHORITIES

**Cases**

Bertram Lefkowitz, Etc. v. Smith Barney, 804 F.2d 154 (1st Cir. 1986) ..... 7
Chiarella v. United States, 446 U.S. 222 (1980) .......................... 6
Griffin v. United States, 502 U.S. 46 (1991) ............................ 8
United States v. Dowling, 739 F.2d 1445 (9th Cir. 1984), rev'd on other grounds, 473 U.S. 207 (1985) ................................. 6, 8
United States v. Handy, 761 F.2d 1279 (9th Cir. 1985) ............... 2, 5
United States v. Skelly, 442 F.3d 94 (2d Cir. 2006) ..................... 7
United States v. Szur, 289 F.3d 200, 208 (2d Cir. 2002) ............. 7, 8
United States v. Woods, 335 F.3d 993 (9th Cir. 2003) .................. 7

**Statutes**

18 U.S.C. § 3143(b)(1).................................... 1, 2

Appellant Curtiss Parker moves for bail pending appeal. He is currently in custody pending appeal. He has served almost all of his sentence. Because appellant is not a flight risk or a danger, and because his appeal presents substantial questions, which if successful, would result in reversal, an order for new trial, or a sentence less than the anticipated time for appeal, he should be admitted to bail.

To qualify for release pending appeal, a defendant must satisfy the conditions established by 18 U.S.C. § 3143(b)(1). Section 3143(b)(1) provides for release pending appeal if the judicial officer finds -

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released…:[and]
>
> (B) that the appeal is not for the purposes of delay and raises a substantial question of law or fact likely to result in
>
> (i) reversal;
>
> (ii) an order for new trial;
>
> (iii) a sentence that does not include a term of imprisonment; or

> (iv) a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1); see United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985). Thus, in order to be released pending appeal, the defendant must show by clear and convincing evidence that he is not a flight risk or a danger to the community; that the appeal is not taken for the sake of delay, and that he is raising a substantial question of law on appeal that is likely to result, in reversal, or a reduced sentence to less than the time served plus the remaining duration of the appeal. Because Mr. Parker can satisfy the standard for bail set forth above, this Court should order that he be released pending appeal.

***Background***

Mr. Parker was released pending trial and sentencing. His codefendants all have been released pending appeal. He has substantial ties to the community of San Diego and is not a flight risk.

Mr. Parker also is not a danger to the community. He had no criminal history prior to the instant offense.

Mr. Parker was remanded into custody approximately 10 days before sentencing after he failed to appear for three alcohol tests and tested positive for use of a prescription drug. He did not seek bail pending appeal at sentencing or subsequently.[1] As a result, he has served almost all of his term of imprisonment.

While incarcerated, Mr. Parker completed the Residential Drug and Alcohol Treatment program and was released to a halfway house on October 14, 2009. A copy of his certificate evidencing his completion of the RDAP is attached as Exh. 2.[2] While in the RDAP, Mr. Parker participated in the "Big Brother Mentor Program," in which he undertook

> added responsibility by volunteering, once you were hand picked by staff, to lead the Big Brother Program for the Residential Drug Abuse Treatment Program (RDAP) at the Federal Correctional Complex, Lompoc, California. You have displayed assertiveness and dedication by going above and beyond the program requirements of RDAP, becoming a mentor in a program in it's infancy stage. Your open-mindedness and assistance in the implementation of the Big Brother Program is to be commended.

---

[1] All of the other defendants in this case have been released pending appeal.
[2] Additional certificates are attached as Exhibits 3-6.

Dr. T. Warren, the Coordinator of the Drug Abuse Program, continued:

> For the past several months, you have held yourself to a higher standard by being the example and role model to others within the community. You were a positive influence for others demonstrating, on a daily basis, the eight attitudes for change; responsibility, willingness, open-mindedness, gratitude, caring, objectivity, humility, and honesty. You have encouraged others to meet a higher potential in themselves by showing your support to other community members offering positive and honest feedback.

Letter of T. Warren, Psy.D., attached as Exh. 1.

Since his release to a halfway house, Mr. Parker has undertaken significant steps to rebuild his life. He found employment as the office manager at La Jolla Star Transportation. He has regularly paid his restitution, both while in prison and while at the halfway house. He is currently negotiating for a contract to write a book. If successful, this would enable him to make more substantial payments on his restitution obligation.

4

During his time at the halfway house, Mr. Parker was subjected to over 200 alcohol tests and numerous drug tests. Each time, he tested negative.

Nonetheless, on January 31, 2010, Mr. Parker was remanded back into custody. Upon returning to his halfway house in the evening, Mr. Parker was asked to test for alcohol. He informed the officer that he had taken Nyquil, because he had the flu. He tested positive, blowing a .03. Mr. Parker has since been remanded into custody. The Bureau of Prisons has taken the position that he consumed alcohol which he disputes. He currently is incarcerated in the county jail.

### *Defendant Meets The Standard For Bail Pending Appeal*

As explained previously, defendant Parker is neither a flight risk nor a danger. He has never been determined to be a flight risk, and he is not a danger. He has made significant strides in dealing with his alcoholism.

Furthermore, the appeal was not taken for purposes of delay: Mr. Parker has raised substantial questions regarding his conviction and sentence.[3]

A substantial question is one that is fairly debatable, and which, if successful, would result in reversal or an order for a new trial. Handy, 761 F.2d at 1283. The statute's use of the word "substantial" defines "the level of merit required in the question presented." The appellant need not establish that he will probably prevail on appeal to qualify for release pending appeal. Id.

Mr. Parker's appeal is consolidated with that of his codefendants, Bryan Laurienti, David Montesano, and Donald Samaria. This Court apparently previously concluded that these defendants raised substantial questions for appeal, because it released them on appeal. In any event, the appellants, individually and jointly, have raised numerous substantial questions on appeal.

---

[3] Indeed, the government conceded error as to some of the restitution order, requiring a remand for resentencing.

6

### A.  It is Fairly Debatable Whether the Court Erred in Directing the Jury to Treat Omissions in the Same Manner as Misrepresentations.

The jury instructions allowed the jury to convict the defendants based both on a material misrepresentation and on a material omission in the absence of a fiduciary relationship between the broker and the client.  It is fairly debatable that this Court erred.  While a defendant may be convicted of fraud based on a material misrepresentation, a defendant cannot be convicted of fraud based on a material omission unless he was under an affirmative duty to disclose the information.  United States v. Dowling,  739 F.2d 1445, 1449 (9th Cir. 1984), rev'd on other grounds, 473 U.S. 207 (1985).  A duty to disclose may be established either by the existence of a fiduciary relationship, Chiarella v. United States, 446 U.S. 222, 228 (1980); accord United States v. Szur, 289 F.3d 200, 208, 211 (2d Cir. 2002), or if the defendant had an explicit statutory obligation to disclose the fact, United States v. Woods, 335 F.3d 993, 1001 (9th Cir. 2003).

There was no statutorily-imposed duty to disclose the information regarding bonus commissions and/or their potential forfeiture.  Under Rule 10b-5,

7

> No SEC rule requires the registered representative who deals with the customer to disclose their own compensation, whether pegged to a particular trade or otherwise.

Skelly, 442 F.3d at 97.

Furthermore, a stockbroker who acts as a salesman does not automatically hold a fiduciary relationship with his customers. Szur, 289 F.3d at 208, 211; Bertram Lefkowitz, Etc. v. Smith Barney, 804 F.2d 154, 155 (1st Cir. 1986). Rather, a relationship of trust and confidence exists only with regard to those matters entrusted to the broker. Szur, 289 F.3d at 211-12. A fiduciary duty may not be implied, because to do so would undermine the common-law principle of *caveat emptor*. United States v. Skelly, 442 F.3d 94, 97-98 (2d Cir. 2006). The question whether a fiduciary relationship exists is a factual one, and is determined by several factors, including whether the broker holds discretionary authority or *de facto* control over the customer account. Id.

The instructions erroneously allowed the jury to convict the defendants of securities fraud on the basis that they made one or more material omissions without also finding that the defendants had the duty to disclose the information at issue. Such a legal

theory is invalid. Dowling, 739 F.2d at 1449; Szur, 289 F.3d at 211. The instructions manifestly affected Parker's substantial rights by allowing the jury to convict him of securities fraud for selling 30,000 shares of EMBU to Lloyd McGowen on the legally invalid theory that he omitted material facts in the absence of a duty to disclose. Griffin v. United States, 502 U.S. 46 (1991).

This plain error affected Parker's substantial rights in several respects. The government's evidence was not otherwise overwhelming. For example, the information presented as to Count 11 (which also went to Parker's involvement in the conspiracy) was that on or about June 30, 1999, he sold 30,000 shares of EMBU to Lloyd McGowen at $2.62/share. E.R. 1026. The allegedly material omissions regarding this sale concerned the payment of bonus commissions, HP's sale policy, and possibly, the information that James Shipley of EMBU had elderly felony convictions and EMBU was delinquent in its SEC filings. Moreover, the error spilled over to the conspiracy conviction, as explained in more detail in the joint opening brief.

The error further prejudiced Mr. Parker, because the government's evidence did not show that he acted in a fiduciary

9

capacity or occupied a position of trust and confidence as to his customers. Instead, the evidence showed that he acted as a salesperson. Indeed, the court declined to give an instruction regarding fiduciary duty, apparently recognizing the undisputed evidence that the defendants lacked discretionary control over investment accounts and acted largely as salesmen. E.R. 193. In this regard, the record showed that HP did not have discretionary customer accounts. E.R. 1759. While one customer, Lloyd McGowen, testified that an unauthorized purchase was made in his account, which tended to show de facto control, he also admitted that the problem was remedied. Thus, the evidence that Parker had discretionary authority or dominance over accounts was underwhelming.

Furthermore, the evidence that Parker knew about , and thus could have disclosed, other omissions alleged to be material was virtually non-existent. James Green, HP's supervisor of brokers, did not learn about Shipley's felony convictions until after Parker had left HP. E.R. 1700. Green learned about EMBU's delinquent filing status in the spring of 1999, but did not tell the brokers. E.R. 1699-1700. Green, who was privy to far more detailed information

than Parker, was uncertain whether EMBU was a legitimate company. E.R. 1912-13. Thus, there was insufficient evidence to support an inference that Parker knew about the omissions relating to EMBU or its chief executive officer.

There also can be no confidence that the jury convicted Mr. Parker based on misrepresentations, because there was little evidence in this regard.[4] Rather, the centerpiece was the government's claim that all of the brokers omitted material information when they failed to disclose the receipt of incentive pay for selling the so-called "house" stocks.

The failure to require the jury to find that the defendants had a duty to disclose was particularly harmful, because the government emphasized omissions throughout its presentation of its case, in particular the undisputed fact that brokers received incentive pay when they sold stock of the companies at issue. The government also emphasized other omitted information: that EMBU's chief executive officer had prior felony convictions which were more than 10 years old and EMBU's delinquent filing status

---

[4] McGowen, who owned his own business and had a history of investing in speculative stocks, admitted that there was a risk to everything. E.R. 1040-45.

11

with the SEC, HP's internal.  The government's emphasis on omitted information made it extremely likely that the jury convicted Parker, not based on alleged misrepresentations, but because he omitted information.   It is fairly datable whether the jury convicted Parker based on a legally invalid theory, making this question substantial.

**B.  The Joint Brief Presents Additional Substantial Questions for Appeal.**

Defendant also incorporates by reference the four additional arguments contained in appellants' joint brief, submitted by counsel for David Montesano and Bryan Laurienti.  That brief contends that the convictions must be reversed, because at the time of the offense, there was no legal authority that imposed a duty on financial advisors to disclose incentive payments.  The brief further argues that reversal is required on all counts for failure to correctly instruct the jury regarding the necessity of a fiduciary duty, the exclusion of the proposed defense expert regarding securities industry practices and the rules of professional conduct for brokers, and allowing the government to use guilt-assuming hypotheticals during the examination of witnesses.  Rather than reiterate -- and

12

retype -- these arguments, appellant has attached a copy of the electronic brief as Exhibit 7.

## CONCLUSION

Based on the foregoing argument, defendant respectfully requests that he be admitted to bail pending appeal.

Dated: March 25, 2010

                                              Respectfully submitted,

                                              _____
                                              Karen L. Landau